## MICHIGAN BOLT & NUT WORKS *v.* STEEL.

CONTRACTS—OFFER AND ACCEPTANCE.

A contract for the season is not consummated by a letter quoting prices for a season's supply of merchandise, in reply to a letter requesting merely that such quotations be furnished, followed by orders at various times for a number of specific articles included among those upon which quotations were so given.

Error to Clinton; Daboll, J. Submitted November 10, 1896. Decided December 9, 1896.

*Assumpsit* by the Michigan Bolt & Nut Works against George A. Steel and others for goods sold and delivered. From a judgment in its favor for less than the amount claimed, plaintiff brings error. Reversed.

*H. J. Patterson*, for appellant.

*Fedewa & Walbridge*, for appellees.

MONTGOMERY, J. This case was determined on special findings of fact. The plaintiff is a corporation doing business in Detroit, engaged in the manufacture and sale of bolts, nuts, etc. Defendants are engaged in the manufacture of harrow teeth, etc., at St. Johns, Mich., under the name of the St. Johns Spring Company. In January, 1894, defendants commenced the purchase of plow bolts of plaintiff. The business was all done by correspondence. On the 12th of July, 1895, defendants wrote to plaintiff as follows:

"What discount will you be able to make us on our season's supply of machine, carriage, and plow bolts; also, our tee head bolts? We have not bought any carriage or machine bolts from you as yet, but may use, the coming season, 100,000 to 125,000. What price can

you make us on set screws, 1¼ to 1½, square head, standard thread? Send samples, if you carry this size in stock."

To this letter the plaintiff replied as follows:

"Answering yours of the 12th, we beg to quote you on your season's supply from now until July 1, 1896, as follows: Machine bolts, 70—12½— 5 per cent. Carriage bolts, 70—5—5 per cent. Plow bolts, in bulk: ⅜", 5c. per pound. 7-16", 4¾c. per pound. ½", 4½c. per pound. Tee head bolts would be at the same price as other plow bolts. We do not make set screws, and cannot quote you on them, for the reason that we cannot cover ourselves at any factory for a year's time; but we would furnish them at the lowest market price at all times, should you give us an order. Present discount on set screws is 70—10 off. Terms on all, 60 days net, f. o. b. Detroit; freight allowed to St. Johns on shipments of 200 pounds or over."

Defendants, on the 15th of July, wrote plaintiff as follows: "Please ship us at once, by freight, 300 plow bolts, ⅜ by one inch," and subsequently, from time to time, ordered plow bolts, which were shipped, on similar orders. Those shipped prior to August 19th were billed at the rate of five cents a pound, but in August there was an advance in price, and the goods shipped in response to the order of August 19th, and in filling subsequent orders, were charged and billed at the rate of six dollars a thousand, which would amount to about seven cents a pound, and which was, at the time of the shipments, the fair market price. Notwithstanding the goods were billed at the rate of six dollars a thousand, defendants did not discover the discrepancy until December 3d, when they wrote plaintiff, calling attention to the fact that a price had been made of five cents a pound. To this the plaintiff replied, stating that no acceptance of its offer in July had been received, and that the offer was made as an inducement to secure the entire business of defendants. Plaintiff refused to make the concessions claimed, and brought this suit.

It appears that there was due the plaintiff, at the fair market price, for the goods shipped, $58.98; whereas, if the price quoted July 13th is to control, there was due but $14.10, which was tendered. The circuit judge found, from this evidence, that a contract had been made to furnish such bolts as defendants might want, and as were designated in their letter of July 12th, at the price of five cents a pound, and gave judgment for $14.10 only, with costs in favor of the defendants, incurred subsequent to the tender. Whether this conclusion is to be sustained depends upon whether the correspondence of July 12th and 13th made a contract between the parties. We are of the opinion that it did not. The letter of July 13th was a quotation of prices for the season's supply, required by defendants up to July 1, 1896. By their letter of July 12th, defendants did not undertake to buy any of their supply from the plaintiff. Before they could be bound to do so, there must have been an acceptance of plaintiff's proposition of July 13th. No such acceptance was shown. Defendants rely upon the case of *Cooper* v. *Wheel Co.*, 94 Mich. 272 (34 Am. St. Rep. 341). That case is clearly distinguishable from the present. In that case there was an order for the season's supply at stated prices, which was accepted by the defendant in writing. Such is not the case here. There was no assurance, either in writing or by parol, given to the plaintiff that the defendants would purchase all their requirements of the plaintiff.

The judgment will be reversed, and a judgment entered in this court in favor of the plaintiff for the sum of $58.98, with interest, and costs of all the courts.

The other Justices concurred.